### Application of FLORIDA GAS UTILITIES COMPANY.
No. 5773-GU.

Railroad & Public Utilities Commission.
June 6, 1961.

R. Y. Patterson, Jr., St. Petersburg, for the applicant.

Sanford Freed, Miami, for the Miami Junior Chamber of Commerce.

Herbert B. Wilensky, Miami, for the Greater Miami Apartment House Association.

Chairman WILBUR C. KING, Commissioners JERRY W. CARTER and EDWIN L. MASON each participated in the hearings and disposition of this matter.

BY THE COMMISSION.

The present rates of Florida Gas Utilities Company for the sale of natural gas at Miami were fixed by the commission in its order #2772-A in the above docket as temporary rates for a test period of one year. The order was issued on July 15, 1959, and it was the intention of the commission to hold a public hearing at the end of one year for the purpose of fixing the permanent rates to be observed by said utility. However, the burden of an ever increasing docket together with a very limited staff have resulted in a delayed revision of the utility's rate schedules. The purpose of this present order is to fix the new rate schedules to be observed by Florida Gas Utilities Company for the sale of natural gas at Miami in the future and until the further order of the commission.

After a series of public hearings in the city of Miami, the commission has come to the conclusion that the rates proposed by the utility cannot possibly under existing conditions give the utility any return on its investment much less the fair and reasonable return that it would be entitled to earn under the laws of this jurisdiction. This conclusion was recognized at the last hearing in this docket and it was concurred in by the attorney of record representing the city of Miami and the Miami Junior Chamber of Commerce as protestants. At the same time, it was agreed between the general counsel for the commission, the attorney for said protestants, and the attorney for the gas company, that the commission could proceed to a decision on the rate schedules to be approved for the sale of natural gas at Miami by Florida Gas Utilities Company without waiting for a final consideration and decision on the permissible rate of return and the rate base upon which said return should be earned. In this connection, it should be noted that there is at the present time an unresolved disagreement between the commission's staff and the utility on the proper treatment to be accorded the utility's claims for acquisition adjustment, extraordinary property losses, and conversion costs incurred in the changeover from manufactured gas to natural gas. The commission is presently involved in a series of public hearings which have been, and are being held for the purpose of fixing the permanent rates for this utility at its various distribution districts throughout

the state and the same problem exists in each distribution district's docket with reference to the treatment to be accorded acquisition adjustment, extraordinary property losses, and conversion costs. At the last hearing in this docket, the commission's general counsel proposed that cross examination of witnesses, and the presentation of rebuttal testimony, as the same might relate to these three items, be deferred to the last hearing in the series since the principle finally adopted by the commission should apply in each of the pending dockets. Counsel representing the utility and the protestants all agreed to the proposal and it was adopted by the commission.

Also, at said hearing, counsel representing the utility and the protestants announced that they were attempting to reach an agreement between themselves concerning rate schedules which they hoped to be able to present to the commission for its consideration and approval. They requested permission to proceed with said negotiations and, if successful, file the resulting agreement or stipulation with the commission as a late filed exhibit in the proceeding for its consideration. This request was granted and the parties have filed with the commission a stipulation resolving their differences.

The stipulation is between the Miami Junior Chamber of Commerce, the City of Miami, and the Greater Miami Apartment House Association, as protestants, and Florida Gas Utilities Company, Miami Division, and has been signed by attorneys of record for said parties. By this stipulation, the respective parties agree that the commission, if it finds said rates acceptable, may approve without further hearing or testimony the following —

1. *General Service Rate Schedule (GSM):*

   *Monthly Rates*

   | | | | |
   |---|---|---|---|
   | First | 5 Therms | @ | 40 cents per therm |
   | Next | 10 Therms | @ | 32 cents per therm |
   | Next | 15 Therms | @ | 31 cents per therm |
   | Next | 70 Therms | @ | 22 cents per therm |
   | Next | 100 Therms | @ | 20 cents per therm |
   | Next | 800 Therms | @ | 15 cents per therm |
   | Over | 1000 Therms | @ | 13 cents per therm |

   *Minimum Bill*

   $1.50 per month, or for any lesser period which results from the discontinuance of service.

2. *Meter Unlock Charge*

   The Company shall bill the customer in the amount of $2.50 as reimbursement for the cost of unlocking the meter at the time of initiation or restoration of service, including restoration of service to a customer to whom service has been disconnected for any customer delinquency.

3. *Termination Charge*

The Term of Service provision contained in the utility's existing tariff providing for the assessment of a $2.00 Termination Charge when the customer's total bill for gas is less than $15.00 for the entire period of use shall be cancelled simultaneously with the effective filing of the aforesaid $2.50 Meter Unlock Charge.

4. *Service Charge*

The utility's proposed provision relative to servicing of customer's installation and equipment shall be amended by adding thereto the following:

"In the event the only service rendered is the investigation of gas leaks on customer's installation, this service charge shall not apply."

so that the amended provision will be:

"The Customer shall reimburse the Company for servicing the Customer's installation or equipment performed at the request of the Customer by paying to the Company:

    (a)  A service charge of $2.50; and

    (b)  Retail price of repair parts or materials used in such servicing. Such amount shall be paid by the Customer either at the time the servicing is performed, or shall be billed and payable with the billing and payment for Gas Service immediately following the rendition of the servicing. In the event the only service rendered is the investigation of gas leaks on customer's installation, this service charge will not apply."

The commission has given careful consideration to the stipulation of the parties and has concluded that the same should be approved. The rates proposed by the utility for the sale and distribution of natural gas through its Miami Division during this series of hearings, in lieu of the rates previously approved by the commission for the temporary application and presently in effect, would not develop adequate revenues to meet the utility's full costs of operation excluding a return on its investment. The rates and charges now proposed by the parties through their stipulation and agreement will produce even less revenue. However, it is the position of the utility that it would be disastrous to its future growth and development to charge, at this time, the rates that would give it a fair return on the reasonable value of its property devoted to the public use. We concur in that position and recognize the desirability of approving rates for the sale of natural gas by said utility that will enable it to grow and more fully develop its service area so that through increased sales volume, its revenues and expenses can be more properly related.

It is also the conclusion of the commission that the fixing of rates for the sale of natural gas by said utility through its Miami Division need not await the commission's final decision on the rate base subjects of acquisition adjustment, extraordinary

property losses, and conversion costs. Those subjects can be considered by the commission with reference to all the distribution divisions of said utility at one time, inasmuch as the principle involved is the same in each division. Further, the decision with reference to said rate base subjects will have little or no effect on the actual rates and charges to be fixed by the commission at this time for application in the various divisions. For the reasons stated, therefore, we will follow that procedure and fix the Miami Division rates at this time but reserve further consideration and decision concerning the aforesaid rate base subjects until a further order of the commission.

Based upon the entire record herein, the commission finds that the stipulation and agreement between the respective parties to this proceeding, hereinbefore referred to, is in the public interest, recognizes and protects the rights of the public and the utility, and presents for the commission's approval proposed rates and charges which will be fair and reasonable to all parties concerned in the light of the circumstances which exist in the service area of the utility's Miami Division.

It is therefore ordered — (1) That the stipulation and agreement aforesaid between the Miami Junior Chamber of Commerce, the City of Miami, and the Greater Miami Apartment House Association, as protestants, and Florida Gas Utilities Company, Miami Division, is hereby approved. (2) That the rates and charges set forth in said stipulation are approved as fair and reasonable rates and charges to be assessed by said utility for the sale and distribution of natural gas through its Miami Division until further order of the commission. (3) That the Florida Gas Utilities Company shall forthwith file with the commission appropriate tariffs and rate schedules for its Miami Division consistent with said stipulation and this order, which tariff and schedules shall become effective with all meter readings on and after June 15, 1961.